## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

MARIA JIMENEZ,
    - Plaintiff

    v.                           CIVIL NO. 3:13CV00554(TPS)

CAROLYN W. COLVIN,
ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,
    - Defendant

### MAGISTRATE JUDGE'S OPINION

Plaintiff Maria Jimenez brings this appeal under §§ 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of a final decision by the Commissioner of the Social Security Administration ("SSA") denying her application for Title XVI Supplemental Security Income ("SSI"). Plaintiff has moved for an order reversing the Commissioner's decision or, in the alternative, for an order remanding her case back to the Commissioner for further proceedings. (Dkt. #12). The defendant has moved for an order affirming the decision. (Dkt. #15). Plaintiff also filed a reply brief in this case. (Dkt. #16). For the reasons stated below, plaintiff's motion should be **DENIED**. The defendant's motion should be **GRANTED**. 28 U.S.C. § 636(b)(1)(A).

I.    **STANDARD OF REVIEW**

In reviewing a final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c), the district court performs an appellate function. Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977). A reviewing court will "set aside the [Administrative Law Judge's ("ALJ")] decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence")(citations omitted). "Substantial evidence" is less than a preponderance, but "more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  See Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing

whether the evidence which supports the Commissioner's position, is required to "review the record as a whole")(citations omitted). Still, the ALJ need not "reconcile every conflicting shred of medical testimony." Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981). In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision." Morris v. Barnhardt, 02 Civ. 0377 (AJP), 2002 U.S. Dist. LEXIS 13681, at *12 (S.D.N.Y. July 26, 2002).

The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims. Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987); 20 C.F.R. § 416.920. First, the Commissioner considers if the claimant is presently working in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the Commissioner next considers if the claimant has a medically severe impairment. Id. § 416.920(a)(4)(ii). If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is equal to a listed impairment. Id. § 416.920(a)(4)(iii); Pt. 404, Subpt. P. App. 1. If so, the disability is granted. If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity (or "RFC") allows him or her to perform any past work. Id. § 416.920(a)(4)(iv). If a claimant demonstrates that no past work can be performed, it then becomes incumbent upon the Commissioner to come forward with evidence that substantial gainful alternative employment exists

which the claimant has the residual functional capacity to perform. Id. § 416.920(a)(4)(v). If the Commissioner fails to come forward with such evidence, the claimant is entitled to disability benefits. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990); Berry, 675 F.2d at 467.

While the claimant bears the burden of proving the first four steps, the Commissioner must prove the final one. Berry, 675 F.2d at 467. Thus, if the claimant is successful in showing that he is unable to continue his past relevant work, "the [Commissioner] then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

**II.**     **DISCUSSION**

### A.    SUMMARY OF THE ALJ'S DECISION

The facts and procedural history are familiar to the parties, and the court will not repeat them in depth. The ALJ considered plaintiff's eligibility for benefits under the five-step sequential evaluation process promulgated by the Commissioner. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 7, 2009, the application date.[1]  (Tr. 24). At step two, the ALJ found that plaintiff's severe impairments are

---

[1] Although plaintiff contends that she was disabled as of May 22, 2006, she would only be entitled to benefits as of the date her application was filed. (Tr. 190).

epilepsy, asthma, and depression.  (Tr. 24).  At step two the ALJ also considered plaintiff's complaints of arthritis and vertebral disc condition, but found "no evidence of medically acceptable clinical or diagnostic techniques to support a conclusion of severity." (Tr. 25).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 25).

Before proceeding to steps four and five, the ALJ evaluated the entire record in order to determine the plaintiff's residual functional capacity.  In order to support his determination, the ALJ considered all of plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.  (Tr. 25-30).  With respect to plaintiff's symptoms, she alleges pain in her back and leg stemming from severe arthritis and a vertebral disc condition, problems breathing related to her asthma, seizures related to her epilepsy, and depression.  The ALJ noted that plaintiff, "has the following limitations in the broad areas of functioning: mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration." (Tr. 25).  ALJ Burlison specifically recounted plaintiff's testimony that "she has epileptic episodes, is often tired, and cannot stand

very long due to pain." (Tr. 27). The ALJ considered plaintiff's testimony that her "emotional state is often tearful, angry, and depressed." (Tr. 27). Plaintiff indicated that she cannot stand long, has difficulty sitting, cannot lift objects, and has trouble paying attention and concentrating on occasion.

The ALJ also took note of the treatments that plaintiff testified to undergoing. Plaintiff asserted that she goes to the doctors approximately once a week. (Tr. 27). She takes a muscle relaxer and uses a pain patch for her back and leg pain. (Tr. 27). As of the ALJ's hearing, plaintiff had recently been prescribed physical therapy, a treatment she had done in the past. (Tr. 27). Plaintiff takes medication for her seizure disorder, which she alleges causes sleepiness. (Tr. 27). Plaintiff claims that this sleepiness causes her to take two naps per day. (Tr. 28). Plaintiff sees a therapist once a week and takes Prozac for her depression. (Tr. 27).

In terms of plaintiff's daily activities, the ALJ indicated that plaintiff spends most of her day resting or performing household tasks with the help of her children. (Tr. 27). The ALJ made note of plaintiff's testimony that "she performs a number of household chores like cooking and cleaning and independently performs personal care tasks." (Tr. 25). Plaintiff denies driving a car, and instead is driven around by a friend. The ALJ noted that plaintiff is able to wash her hair and bathe herself, but needs to sit in the shower to do so. (Tr. 27).

Following the two-step standard used to evaluate a claimant's symptoms, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the record as a whole." (Tr. 28). In reaching this determination, the ALJ specifically noted that plaintiff's "alleged level of limitation is not congruent with the objective medical evidence." (Tr. 28).

The ALJ noted this discrepancy in the physical examination performed by consultative examiner Dr. Ronald S. Jolda, in March 2010. (Tr. 28). Dr. Jolda determined that plaintiff had "normal gait and ambulation, unrestricted respiration, slightly reduced lumbar range of motion, and normal functioning of the extremities." (Tr. 28, 438-41). Dr. Jolda made note that although plaintiff complained of back pain, there were no "localizing findings." (Tr. 28, 441). Dr. Jolda also noted plaintiff's asthma as mild, and her seizures as being "emotional seizures." (Tr. 28, 441). The ALJ also referenced treatment notes that indicated plaintiff's physical exams were normal and that her seizure disorder had been stabilized with medication. (Tr. 28, 11-13). ALJ Burlison also referenced plaintiff having normal results for the following tests: chest x-rays; computed tomography ("CT") scans of plaintiff's head; an electroencephalogram ("EEG") diagnostic; and a brain MRI. (Tr. 28, 473-76).

The ALJ referenced additional evidence in the record to support her finding that the objective medical findings did not support plaintiff's alleged level of limitation. ALJ Burlison cited examinations performed by Dr. Helar Campos, M.D., noting that the physical examinations he performed on plaintiff were essentially normal. (Tr. 28, 503-16). The ALJ also noted the numerous physical examinations that were normal throughout 2009 and 2010. (Tr. 28, 449-59, 503-16). Although the ALJ did point out one abnormal examination in May of 2009, the ALJ noted that this examination took place directly subsequent to the request for completion of disability paperwork. (Tr. 28, 462). The ALJ also noted that after this examination, examinations of plaintiff's musculoskeletal system returned to normal. (Tr. 28, 465).

ALJ Burlison also questioned the severity of plaintiff's alleged mental impairments, noting that plaintiff's condition appeared to improve with therapy from 2009 through 2011. (Tr. 29). The ALJ noted the consultative examination performed by Yunus Porthiawala, M.D., which indicated that plaintiff "showed no signs of overt psychosis." (Tr. 29, 434). This exam also revealed "no active suicidal or homicidal ideations, appropriate affect, orientation in all spheres, and clear sensorium." (Tr. 29, 434). Dr. Porthiawala diagnosed plaintiff with dysthymia, without ruling out the possibility of major depression. (Tr. 434).

The ALJ also considered the consultative examination performed by Dr. Jesus A. Lago. (Tr. 29). Dr. Lago ruled out major

depression and dysthymia, noting that "[w]ith proper psychiatric care and followup, Ms. Jimenez's condition should improve." (Tr. 29, 446). A treatment note from Dr. Campos indicated that plaintiff's "depression...appears to be stable at this point." (Tr. 29, 514). ALJ Burlison also relied on treatment notes that indicated both that plaintiff's mood was improving, and that her condition was not worsening. (Tr. 29, 766; 824-849). The ALJ specifically referenced treatment notes in which plaintiff "described herself as less stressed and sleeping well with less intrusive thoughts." (Tr. 29, 835). ALJ Burlison also noted an instance in July of 2011 where Dr. Campos described plaintiff's mood as euthymic. (Tr. 29, 802). These facts led the ALJ to find that "the medical record reveals that the [plaintiff's] impairments are significantly less limiting than she has alleged." (Tr. 29).

ALJ Burlison also considered the course of treatment that plaintiff's physicians pursued in treating her conditions. (Tr. 29). The ALJ noted the more conservative nature of physical therapy compared to surgery, and referenced a treatment note from Dr. Campos where he indicated that plaintiff was not a good candidate for surgery. (Tr. 29, 802). ALJ Burlison also referenced the lack of attendance compliance at plaintiff's physical therapy, which indicated to the ALJ that plaintiff was contributing to her own symptoms and that plaintiff did not consider her impairments to be "so severe as to require this treatment." (Tr. 29, 535).

The ALJ afforded "some weight" to the opinion of Veronica S. Flores, who although not an acceptable medical source, did serve as plaintiff's clinical counselor for a number of years.   (Tr. 30). Ms. Flores noted that plaintiff had marked limitations in: "understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, and sustaining an ordinary routine without special supervision." (Tr. 30, 690).  Ms. Flores also indicated that plaintiff had moderate limitations in the areas of "understanding and memory, sustained concentration and persistence, and adaptation." (Tr. 30, 690-91).  ALJ Burlison viewed this as supporting her finding that plaintiff is limited to "unskilled work characterized by simple, routine, and repetitive tasks." (Tr. 30).

The ALJ also considered the opinions of State psychological consultants Kirk Johnson, Psy.D., and Robert G. Sutton, Ph.D., who both found that plaintiff had a non-severe mental impairment and that plaintiff's depression caused "no more than mild limitations . . . ." (Tr. 30, 72, 90).  The ALJ assigned "little weight" to these opinions, finding that plaintiff is "more mentally limited than the psychological consultants determined." (Tr. 30).

ALJ Burlison also relied on examinations by Drs. Virginia H. Rittner and Barbara Coughlin, who indicated that while plaintiff did not have exertional limitations, she "could never climb ladders, ropes, or scaffolds, and must avoid all exposure to hazards like machinery and heights." (Tr. 30, 74-75, 91-92).  The

ALJ also noted that although Dr. Coughlin added additional limitations based on plaintiff's asthma, Dr. Coughlin expressly concluded that asthma was not a severe impairment. (Tr. 30, 89, 91-92). Due to this discrepancy, the ALJ only assigned "some, but not great, weight" to these opinions. (Tr. 30).

Based on her review of the medical evidence in the record and her assessment of the plaintiff's symptoms, the ALJ concluded that "plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [t]he claimant requires a reasonably clean work environment; must avoid hazards like heights and moving machinery; and is limited to simple, routine, and repetitive tasks." (Tr. 26).

After determining plaintiff's residual functional capacity, the ALJ proceeded to step four and concluded that plaintiff "has no past relevant work," under 20 C.F.R. § 416.965. (Tr. 30). Finally, at step five, the ALJ found that given the plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 31). Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 31). Thereafter, the Appeals Council denied review of the ALJ's decision on July 19, 2012. (Tr. 1-6).

**B.   ANALYSIS**

As discussed above, a reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  The Court will address each of the alleged errors raised by plaintiff in support of her Motion to Reverse or Remand the Commissioner.

**1.   Whether the ALJ Committed Legal Error in Determining that Plaintiff's Degenerative Disc Disease Was Not a Severe Impairment**

Plaintiff argues that the ALJ committed legal error in determining that her degenerative disc disease was not a severe impairment. Pl. Br. at 12-13.  A step two determination requires the ALJ to assess the severity of a claimant's impairments.  20 C.F.R. §§ 416.920(a)(4)(ii), (c).  A claimant carries the burden of establishing that she is disabled and must provide the medical and other evidence necessary to make determinations as to disability.  20 C.F.R. § 416.912(a).  An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996).  An impairment that is "not severe" must only be a slight abnormality that has a minimal effect on an individual's ability to perform basic work activities.  Id.; SSR 85-28, 1985 WL 56856, at *3.

At step two, if the ALJ finds that an impairment is severe,

"the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 73 F. App'x 801, 803 (6th Cir. 2003). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." Id. (citing 20 C.F.R. § 404.1545(e)). While the Second Circuit has not directly stated that incorrectly applying the step two legal standard is harmless error when some of a claimant's impairments are determined to be severe and others not, other circuits have so stated. See, e.g., Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). A harmless error approach is consistent with the Second Circuit's finding that step two severity determinations are to be used only to screen out de minimis claims. See Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

Moreover, the determination that plaintiff's degenerative disc disease was not a severe impairment is based on substantial evidence in the record. The ALJ stated that "x-rays and findings on muscoloskeletal and neurological evaluation were essentially normal." (Tr. 25, 458-60, 512-14, 609). ALJ Burlison found that the one MRI that revealed spinal degeneration was outweighed by the

totality of the objective medical evidence.[2] (Tr. 25, 608). The ALJ referenced the numerous physical examinations that were normal throughout 2009 and 2010. (Tr. 28, 449-59, 503-16). Plaintiff's physical therapy records also support the ALJ's findings. Treatment notes from July 2009 indicate a pain level of eight out of ten. (Tr. 588). By October of 2009, plaintiff was reporting that with physical therapy her pain had been reduced to levels of three out of ten and two out of ten, and even an occasion where she had no pain. (Tr. 553, 547). Finally, a note from November of 2009 indicates that plaintiff reported "that she is about 50% better since she started therapy." (Tr. 538). As the ALJ points out, plaintiff's lack of attendance at physical therapy treatments ultimately caused her to be discharged. (Tr. 535). The treating therapist noted that plaintiff "has been making slow progress since the start of her care partly due to lack of attendance compliance." (Tr. 535). Combined with the fact that plaintiff herself reported improvements of up to fifty percent from the physical therapy, this supports the ALJ's contention that the limitation alleged is not supported by the record as a whole. (Tr. 535). There was no reversible error.

### 2. Whether the ALJ's Residual Functional Capacity Finding Was Supported by Substantial Evidence

---

[2] This evidence includes the RFC determination that the ALJ made, discussed <u>infra</u> at Section II, B, 2.

The court next considers plaintiff's claim that the ALJ improperly determined her residual functional capacity. Specifically, plaintiff argues that the ALJ's RFC determination as to plaintiff's mental and physical functional capacity was not supported by substantial evidence.  Pl. Br. at 14.  The court addresses the physical and mental aspects of the ALJ's RFC determination in turn.

As to the physical RFC determination made by the ALJ, the court concludes that substantial evidence in the record supports the ALJ's decision.  The ALJ found that plaintiff can "perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant requires a reasonably clean work environment; [and] must avoid hazards like heights and moving machinery." (Tr. 26).

First, the opinions of state agency reviewing physicians Drs. Rittner and Coughlin support the physical RFC finding made by the ALJ.  While both doctors concluded that plaintiff had no exertional limitations, the ALJ actually gave plaintiff a more favorable RFC determination than the examiners, limiting plaintiff to, "a reasonably clean work environment." (Tr. 74, 91, 26).  Along with these opinions, a "reasonable mind" could find that the ALJ relied on substantial evidence in the record to support her determination.

In regards to plaintiff's back pain, there is substantial evidence in the record that the condition is not as limiting as plaintiff claims.  As the ALJ points out, plaintiff did have an MRI

that revealed "[m]oderate L4-5 disc degeneration with moderate central disc protrusion, and mild to moderate foraminal stenoses at this level." (Tr. 25, 608). The severity of this injury, however, is countered by the numerous treatment records that indicated plaintiff had normal musculoskeletal examinations throughout 2009 and 2010. (Tr. 28, 449-59, 503-16). In July of 2011, after the MRI that revealed the spinal dessication, Dr. Campos indicated that plaintiff was not a good candidate and instead recommended physical therapy. (Tr. 802). As discussed above, plaintiff herself indicated that her pain and symptoms improved during the course of her physical therapy treatment. (Tr. 29) See, supra, Section II, B, 1. This indicates that physical therapy was effective in reducing plaintiff's symptoms. As such, the record reveals that a "reasonable mind," could find that the ALJ relied on substantial evidence in determining that the plaintiff was not as limited as she claimed. Richardson, 402 U.S. at 401.

There is also substantial evidence in the record that plaintiff's asthma is not as disabling as she claims it to be. Plaintiff's treating sources repeatedly make reference to her asthma being either under control, or controlled, by medicine. (Tr. 466, 471, 804). Dr. Campos, plaintiff's treating physician, noted multiple times in 2011 that plaintiff's asthma was stable. (Tr. 804, 808, 810). Dr. Campos had similarly noted that plaintiff's asthma was controlled in 2009. (Tr. 466.) This is all

objective medical evidence that stands in opposition to plaintiff's contentions and that supports the ALJ's RFC determination.

Plaintiff also argues that the ALJ's decision to not find plaintiff's epilepsy more disabling than she did was not supported by substantial evidence. Pl. Br. at 14. The ALJ considered objective evidence in reaching this decision. This evidence included CT scans of the brain, an EEG, chest x-rays, and an MRI of the brain that were all normal. (Tr. 28, 473-76).

Similar to plaintiff's asthma, the record reveals that plaintiff's epilepsy condition has been controlled when she takes her medication. A treatment record from March of 2007 indicates that plaintiff described her seizures as "well under control." (Tr. 301). A treatment note from December of 2008 indicates that plaintiff has a "[g]eneralized seizure disorder controlled on Dilantin 100 twice a day." (Tr. 424). A treatment note from April of 2009 similarly indicates that plaintiff's seizure condition was stable while on Dilantin. (Tr. 460). In October of 2009 plaintiff's condition was again found to be well controlled while on Dilantin. (Tr. 676). Furthermore, at the mental status exam that plaintiff underwent with Dr. Losada-Zarate, plaintiff reported "that her seizure disorder is effectively controlled by medications." (Tr. 367). This evidence is further supported by the ALJ's reference to Drs. Rittner and Coughlin, who both found that plaintiff's epilepsy only limited her to avoiding hazards and

17

heights.  (Tr. 30).  This evidence all stands in opposition to plaintiff's claims about the limitations imposed by her epilepsy.

Plaintiff further argues that it was error for the ALJ to not more fully discuss plaintiff's contentions that she needs to nap twice a day.  Pl. Br. at 18.  The Second Circuit has held that an "ALJ does not have to state on the record every reason justifying a decision."  Brault v. Social Secuirty Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).  Here, the ALJ mentioned plaintiff's contention that she needs to nap during the day and then declined to include a need for naps in her RFC determination.  (Tr. 26-28).  As such, it is clear that the ALJ did not accept plaintiff's contention that she needs to nap during the day, and it was acceptable for the ALJ to do this without further explanation.  See Brault, 683 F.3d 448.

As to the mental RFC determination made by the ALJ, the court concludes that substantial evidence supports her determination. The ALJ found that plaintiff can perform "simple, routine, and repetitive tasks." (Tr. 26).  Plaintiff argues that her depression and anxiety prevent her from performing these types of tasks.

First, similarly to the physical RFC determination made by the ALJ, the ALJ's mental RFC determination is more favorable to plaintiff than the opinions of Drs. Johnson and Sutton.  Both Drs. Johnson and Sutton determined that plaintiff has no severe mental impairment, and that she has only mild limitations in activities of

daily living, social functioning, concentration, and persistence or pace. (Tr. 71-72, 89-90).

Along with these opinions, the ALJ also relied on the opinions of consultative examiners. Dr. Porthiawala, who examined plaintiff in February of 2009, "noted that the claimant showed no signs of overt psychosis such as delusions, hallucinations, looseness of associations, or disorganized thinking." (Tr. 29). Dr. Porthiawala indicated that plaintiff was limited only by a somewhat decreased attention and concentration. (Tr. 29, 434). The ALJ also relied on the consultative examination performed by Dr. Jesus A. Lago, who indicated that "with proper psychiatric care and followup, Ms. Jimenez's condition should improve." (Tr. 29, 446). A careful search of the record shows that by plaintiff's own admissions her condition improved with psychiatric care.

Plaintiff began therapy in November 2009, indicating that her depression and anxiety were a result of domestic abuse suffered in her past. (Tr. 29, 750). Over the course of her treatment, there are numerous examples of plaintiff stating that her symptoms were improving. In a treatment note from October of 2010, Plaintiff's flashbacks were noted as being resolved, and it was also noted that her "mood [was] improving." (Tr. 766). In December of 2010, plaintiff told her physician that "I'm getting better." (Tr. 758). A treatment note from April of 2011 noted that plaintiff had a "balanced mood and no severe anxiety." (Tr. 842). A note from July of 2011 indicates that plaintiff described herself as having

"less stress and [a] balanced mood." (Tr. 835). In July of 2011, Dr. Campos described plaintiff's mood as euthymic. (Tr. 29, 802). Also in July of 2011, it was noted that "overall [plaintiff had] no depressive episodes & on [a] daily basis anxiety is well controlled." (Tr. 825). Although the ALJ did not explicitly refer to each of these notes, she did expressly refer to the area of the record that these notes were located. (Tr. 29). A "reasonable mind" could find that the ALJ relied on substantial evidence in reaching her mental RFC determination. Richardson, 402 U.S. at 401.

The ALJ also relied on other significant evidence in the record to support her mental RFC conclusion. The ALJ noted that plaintiff is able to perform household chores such as cooking and cleaning. (Tr. 26). The ALJ also stated that plaintiff had not sought any psychiatric care prior to filing this claim for disability, and as discussed above, when she did seek this care her condition improved. (Tr. 29). Dr. Campos also noted in a treatment note from September of 2009 that plaintiff's "depression . . . appears to be stable at this point." (Tr. 514). Based on all of this evidence, a "reasonable mind," could find that the ALJ relied on substantial evidence in reaching her RFC determination. Richardson, 402 U.S. at 401.

Plaintiff also argues that the ALJ erred by not assigning more than "some weight" to the opinion of Ms. Flores, plaintiff's counselor, and by not more fully explaining why more weight wasn't

given to Ms. Flores' opinion.  Pl. Br. at 15.  Ms. Flores completed a mental RFC assessment, in which she noted various moderate and marked limitations to plaintiff's mental RFC.  (Tr. 30, 690-691). The ALJ explicitly considered Ms. Flores' opinion in making her RFC determination that limited plaintiff to unskilled work.  (Tr. 30).

The ALJ did not need to provide more information in reaching this determination.  Ms. Flores, a counselor, is not an "acceptable medical source."  20 C.F.R. § 416.913(a).  Instead, Ms. Flores is classified as an "other source."  20 C.F.R. § 416.913(d).  In the Second Circuit, "while the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008).  The court in Genier went on to add that the ALJ was "free to discount the assessments" that were made by an "other source."  Id., 20 C.F.R. § 416.93(d).  Here, the ALJ actually relied on Ms. Flores' opinion in reaching her mental RFC determination.  (Tr. 30).  In light of the decreased deference that needs to be shown to "other sources," it was permissible for the ALJ to give Ms. Flores' opinion only "some weight."  20 C.F.R. § 416.913(d); (Tr. 30).

Plaintiff also claims that it was error for the ALJ to not expressly mention the consultative examination rendered by Dr. Losada-Zarate in May of 2008.  Pl. Br. at 17.  Plaintiff has failed, however, to demonstrate prejudice from this report not

being included in the ALJ's decision.  <u>See</u> <u>Shinseki v. Sanders</u>, 556 U.S. 396 (2009) (indicating that in an administrative hearing, the party challenging the decision generally has the burden that any error committed during the decision making process was harmful). Dr. Losada-Zarate indicated that plaintiff may have a "cognitive impairment," and that further psychological testing should be performed.  (Tr. 369).  While ALJ Burlison did not explicitly reference this report, she did expressly consider the consultative examinations performed by Drs. Porthiawala and Lago.  (Tr. 29). Further, the ALJ considered the psychiatric treatment records from the treatment that plaintiff underwent in 2010 and 2011.  (Tr. 29). Also, in line with the opinion of Dr. Losada-Zarate, the ALJ limited plaintiff to unskilled work, which indicates that plaintiff's mental difficulties were considered by the ALJ.

Additionally, the Second Circuit has held that the lack of consideration of a treating source is not a basis for remand when "the report the ALJ overlooked was not significantly more favorable to Plaintiff" than the evidence that the ALJ did discuss.  <u>Zabala v. Astrue</u>, 595 F.3d 402, 409-10 (2d Cir. 2010).  The opinion of Dr. Losada-Zarate, who was an examining source and not a treating source, cannot be said to be "significantly more favorable" to plaintiff than other evidence in the record.  <u>Id.</u>; <u>see</u>, 20 C.F.R. § 416.927(c) (indicating that examining sources are entitled to less weight than treating sources).  Also, the fact that the report by Dr. Losada-Zarate was performed before the date from which

plaintiff is seeking benefits further indicates that any error caused by the ALJ's decision to not explicitly refer to this exam in the record was harmless error. Therefore, the court concludes that it was not error for the ALJ to not explicitly reference the opinion of Dr. Losada-Zarate.

### III. CONCLUSION

For the reasons set forth herein, the ruling of the ALJ that the plaintiff is not disabled is supported by substantial evidence in the record. Therefore, the plaintiff's motion to reverse the decision of the ALJ **(Dkt. #14)** should be **DENIED**. The defendant's motion for an order affirming the decision of the Commissioner **(Dkt. #19)** should be **GRANTED**. 28 U.S.C. § 636 (b)(1)(A).

The parties may timely seek review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72(b). Failure to do so may bar further review. 28 U.S.C. § 636(b)(1)(B); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated at Hartford, Connecticut this 22<u>nd</u> day of August, 2014.**

                                        **/s Thomas P. Smith**
                                        **THOMAS P. SMITH**
                                        **UNITED STATES MAGISTRATE JUDGE**